## Harding v. Bullard, Executor, et al.

(Decided November 24, 1916.)

### Appeal from Campbell Circuit Court.

1. Executors and Administrators—Allowance and Payment of Claims—Demand—When Not Necessary.—Where an action is commenced by the executor, in suing on a note, and claims against the testator's estate are asserted by the defendant by way of counter-claim and set-off, demand of the executor for their payment before the filing of the answer and counter-claim is not necessary or required.

2. Executors and Administrators—Allowance and Payment of Claims—Verification of Claim—Mandatory.—In view of the provisions of sections 3870-74, Kentucky Statutes, even in the absence of an objection from the executor, the court is without authority to allow or give judgment for a set-off or counter-claim against the testator's estate, pleaded by a creditor when sued by the executor on a note, where the creditor fails to verify his claim, as required by the statute.

A. C. HALL for appellant.

HALL & ADAMS for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellee, Thomas P. Bullard, as executor of the will of Jessie Russ Harding, deceased, sued the appellant, R. H. Harding, her surviving husband, in the court below upon a note of $500.00, executed by the latter to the testatrix, February 23, 1899, payable one day after date, with six per cent. interest from its maturity, subject to the following credits, endorsed thereon: $222.29 as of July 1, 1902; $22.00, April 23, 1909; $19.00, July 6, 1909.

The answer of the appellant, containing five paragraphs and styled a set-off, counter-claim and cross-petition, admitted the execution of the note, but alleged its payment in full, and set up an indebtedness aggregating $2,461.40 claimed to be due and owing to him from the estate of the testatrix. This alleged indebtedness includes

divers specified items, such as various sums of money claimed to have been advanced and paid by appellant for the testatrix, with interest on each from the date of the transaction; also the value of certain stock and other personal property alleged to have been wrongfully sold and the proceeds converted by the testatrix. Twelve hundred dollars of the indebtedness sued for it is claimed grew out of the following transaction. That is, it is alleged in the answer that the testatrix on July 1, 1907, was conveyed by deed from Alfred McMullens and Blanche McMullens, his wife, a house and lot in the town of Dayton, Campbell county, this state, for which she agreed to pay them $1,200.00, $500.00 of which was due upon the delivery of the deed and the remaining $700.00 was owing to the Citizens Loan & Savings Association of Dayton, Kentucky, and secured by a mortgage which had been executed to it by McMullens and wife, which mortgage debt of $700.00 the testatrix assumed and agreed to pay; that she was without money to make the cash payment of $500.00 to McMullens or the $700.00 mortgage debt to the loan and savings association, and at her request appellant advanced and paid for her to McMullens the $500.00 and thereafter paid for her to the loan and savings association the mortgage debt of $700.00 due it, which payments, it was alleged, were made by him under an agreement with the testatrix that she would repay both amounts to him or, in the event of her failure to do so, give him such interest in the Dayton house and lot as would equal the amount paid by him to McMullens and the loan and savings association, less what might be due the testatrix by way of balance upon the note of $500.00 upon which he was sued by her executor in this case; that such balance was more than liquidated by the cash payment of $500.00 which he made for the testatrix to McMullens, and he was thereafter informed by her that the note had been destroyed, which he believed to be true until suit was brought against him thereon by the executor; that the testatrix never repaid to him any part of the $500.00 he advanced for her to McMullens or of the $700.00 which he paid to the loan and savings association in discharge of its mortgage, nor did she ever convey to him an interest in the house and lot conveyed her by McMullens and wife. It is further alleged in the answer that the house and lot in Dayton which the testatrix purchased of McMullens and wife was before her

death sold and conveyed by her to H. R. and Martha Guenther at the price of $1,250.00, $800.00 of which was cash in hand paid by the grantees. For the remaining $450.00 they executed to the testatrix sundry notes, payable monthly at the Bank of Dayton, Dayton, Kentucky; that these notes or some part of them yet remain unpaid and that appellant is entitled to a lien thereon or the proceeds, in satisfaction *pro tanto* of his demands against the testatrix's estate for which reason the Bank of Dayton and the Guenthers were asked to be made parties; that the answer of appellant be made a cross-petition against them and the appellee executor and that they be required to make disclosure of the amount yet due upon the notes and pay same into court subject to its order.

It will be observed from what has been said of the averments of the answer, set-off, counter-claim and cross-petition, that it does not allege that the agreement by which the testatrix undertook to give appellant an interest in the Dayton house and lot, in the event of her failure to repay him the sums he advanced in discharge of the consideration therefor, was in writing, and the fact that such agreement, if made, was violated and rendered impossible of performance by the sale and conveyance of the house and lot by the testatrix to the Guenthers was known to him and the sale and conveyance assented to, is shown by his act in uniting with her in the deed to the grantees.

It is admitted by the pleadings that the testatrix, Jessie Russ Harding, was domiciled in Shelby county at the time of her death and that the probate of the will and the qualification of the appellee as executor thereof took place in the county court of that county. The demands against the estate of the testatrix claimed and set up in the answer, set-off, counter-claim and cross-petition of appellant were unsupported or unaccompanied by the statutory affidavits or other proof required of such claims, and neither by a reply nor order of record did the appellee controvert the allegations of the answer, set-off, counter-claim and cross-petition of the appellant. No proof was taken by either of the parties and on a submission of the case upon the pleadings the circuit court entered the following judgment:

"This cause being submitted on the pleadings, the answer containing a good defense not denied, it is adjudged that plaintiff's petition be dismissed and defendant recover of plaintiff his costs incurred thereon. It is

further adjudged that defendant's counter-claim, set-off and cross-petition be dismissed without prejudice and plaintiff recover of defendant his cost herein expended. This court has no jurisdiction."

Appellant complains of so much of the judgment as dismissed his set-off, counter-claim and cross-petition, hence this appeal.

Whether by the expression contained in the closing sentence of the judgment, "This court has no jurisdiction," it was meant that the want of jurisdiction arose out of the fact that the matters pleaded in appellant's answer, set-off, counter-claim and cross-petition, in the opinion of the court, involved a settlement of the testatrix's estate, which should be made in the county where she resided at the time of her death, her will was probated and the executor named therein qualified; or that the want of jurisdiction arose from the fact that appellant's demands against the estate of the testatrix were unsupported by the affidavits required by sections 3870, 3871, 3872, Kentucky Statutes, we are not advised. We assume, however, that the court did not regard itself as lacking in jurisdiction on the ground first mentioned, for the matters set up in the pleading in question do not appear to involve a settlement of the estate, as it is not alleged therein that there are not personal assets in the hands of the executor sufficient to pay the appellant's claims or any other demands that may exist against the estate. It is, therefore, unnecessary for us to pass upon the contention of appellant's counsel that the want of jurisdiction on the ground referred to, if any, was waived by the failure of appellee to raise that question by demurrer.

In view, however, of the provisions of the sections of the statute, *supra,* we conclude that what the circuit court meant by the language quoted was that inasmuch as appellant's demands were not verified by the affidavits therein required, it was without authority to render judgment for any part of them beyond giving him credit on the note sued on by the executor for such part of the moneys as he had advanced for or paid the testatrix as would discharge the balance due thereon. We are fortified in this conclusion by the fact that the first paragraph of the answer alleged full payment and discharge of the note, as well as the manner and date of the payment, which averments were undenied.

Section 3870 provides that demands such as those attempted to be asserted by the appellant shall be verified by the written affidavit of the claimant, "stating that the demand is just, and has never to his knowledge or belief been paid, that there is no off-set or discount against the same or any usury therein; and if the demand be other than an obligation signed by the decedent or a judgment, it shall also be verified by a person other than the claimant, who shall state in his affidavit that he believes the claim to be just and correct, and give his reasons why he so believes."

Section 3871 provides:

"If any part of the demand has been paid, or there be any set-off or discount against the same, or any usury therein, the affidavit shall state the amount of the payment or usury, when the payment was made, and when the off-set or discount was due, to the best of the affiant's knowledge and belief. This verification shall not be held to dispense with other proof of the demand as required by law."

Section 3872 provides:

"Before such affidavit is made, no motion shall be brought or recovery had on any such demand, nor until demand of payment thereof has been made of the personal representative, accompanied by the required affidavit.

Section 3874 provides:

"No demand against a decedent's estate shall be paid by his personal representative, or allowed as a credit by any commissioner or court, which is not verified by affidavit as required herein."

Notwithstanding the positive requirements found in the provisions of the foregoing sections, we have decided that a personal representative who has been sued for a debt owing by the estate of his decedent, may waive the demand for payment of the claim before suit, by failing to make objection to such want of demand, but that he cannot waive the verification of the claim required by the statute. Perry v. Seitz, 2 Duv. 122; Thomas v. Thomas, 15 B. Mon. 184; Howard v. Leavell, 10 Bush 481; Warfield, etc. v. Gardner's Admr., 79 Ky. 583; Rogers v. Mitchell's Exr., 1 Met. 22.

We have also held that in an action brought by a creditor for the settlement of an insolvent decedent's estate, demand of the personal representative before the

institution of the action is not necessary. Fox v. Apper-
son, 6 Bush 653. But in such state of case verification
of his claim and others presented against the estate must
be made before they are allowed or paid. Hoffman v.
Moore, 101 Ky. 288; Hill v. Grizzard, 133 Ky. 816; Grey
v. Lewis, 79 Ky. 453.

As said in Crane & Breed Mfg. Co. v. Stagg's Admr.,
135 Ky. 428:

"The object of the statute in respect to the verifica-
tion of claims against decedent's estates is to protect
them against unjust or fraudulent claims, and the rea-
son for requiring the claimant, before bringing an action
on his claim, to make demand of payment, is to afford
the personal representative an opportunity to pay it
without cost of suit, and at the same time have a legal
voucher of such payment. If, however, there are no as-
sets in the hands of the personal representatives with
which to pay the decedent's debts, or such as he may
have be insufficient for that purpose, but the decedent
left real estate liable for such debts, there can be no
reason or necessity for a creditor's presenting his claim,
accompanied by the statutory affidavit, to the personal
representative, in order to entitle him (the creditor) to
bring suit for the purpose of subjecting such real estate
to the payment of the decedent's debts, including his
own.

"As was well said in Huffman v. Moore's Admr.,
*supra*: 'Indeed, the right to bring an action such as this
is expressly given to a creditor by section 428, Civil Code
Prac. And that right is not thereby made conditional
upon compliance by the creditor with the terms pre-
scribed by the statute in order to maintain an action ordi-
nary to recover personal judgment against the admin-
istrator or executor. Of course, an action such as this
involves a reference to the master commissioner of court
to pass upon and report, subject to approval of court, in
regard to every claim or demand that may be presented,
each of which must be verified and approved as required
by statute before being allowed.' When appellant's
claim against the decedent's estate is presented to the
commissioner, it can then be and should be, verified and
proved in the statutory manner."

The necessity for demand before bringing an original
action against a personal representative is also thus well
stated in Warfield, etc. v. Gardner's Admr., *supra*:

"The reason for requiring a claimant, before bringing an original action against a personal representative, to make demand of him for payment, is, that if the claim is just and properly proved, it may be paid without subjecting the estate to the costs of litigation. But the reason for requiring the demand to be made ceases when the personal representative begins litigation himself. Though such is not the case in respect to the affidavit of the claimant and proof of the justice of the claim."

In this case the action was commenced by the personal representative, in suing upon the note which had been executed by the appellant to his testatrix. The claims asserted in the answer of appellant against the estate of the testatrix, and appellee as her executor, are presented by way of counter-claim, set-off and cross-petition and demand of the executor for their payment before the filing of the answer, counter-claim, set-off and cross-petition was not necessary or required. But while such demand was unnecessary, verification and proof of the claims, as required by the statute, was necessary before the court could render judgment for any of them. Millet v. Watkins, 4 Bush 642; Ward v. Rhorer, 21 R. 1086; Perry v. Seitz, 2 Duv. 122.

In so holding in Warfield, etc. v. Gardner's Admr., *supra*, we said:

"But by subsection 34, section 732, of the present Civil Code, the word 'action' is construed to embrace a demand for a set-off or counter-claim, and by subsection 37 the word 'sue' is construed to refer to an action or special proceeding. . . . . And we are of opinion that both the letter and spirit of the law, as it now is, require that a claim against the estate of decedent, which is pleaded as a set-off or counter-claim, should be verified by the written affidavit of the claimant, and proved in the manner required by law in the case of claims sued upon by original action, and that the personal representative may, when the defendant has not complied with the law in this respect, obtain a rule against him, and upon his failure or refusal after such rule to verify and prove his claim in the manner required by law, his set-off or counter-claim should be dismissed."

The executor in the instant case did not, it is true, object to the want of the necessary affidavit and proof of appellant's demands, nor did he even controvert them, but his failure to do either did not relieve appellant of

the necessity of verifying and proving them in the manner required by the statute. Such verification is not only required by section 3872 of the statute, *supra*, as a condition precedent to a recovery upon a claim against the estate of a decedent, but is also imperatively required by section 3874, which declares:

"No demand against a decedent's estate shall be paid by his personal representative, or allowed as a credit by any commissioner or court, which is not verified by affidavit as required herein."

In view of these provisions of the statute, it was the duty of the circuit court, even in the absence of an objection from appellee as executor to dismiss appellant's counter-claim, set-off and cross-petition, as was done by the judgment rendered, because of the latter's failure to furnish the necessary verification of his claim required by the statute; and whether that court should have allowed so much of the claims as discharged the balance due upon the note sued on by the executor, we need not decide, as the executor has not taken a cross-appeal from that part of the judgment.

We do not overlook the fact that a few cases may be found, such as Lyons Ex. v. Logan Co. Bank's Assignee, 25 R. 1668; Usher v. Flood, 12 R. 721; Tipton v. Richardson, 21 R. 1125, in which it was held that the personal representative had waived both demand and verification of the claim, but all these were cases in which the personal representative had made defense on the merits in the court below, without objection to such want of demand and verification. The reason for our so ruling is patent. A personal representative, after negligently failing to avail himself of the protection designed by the statute in requiring demand of payment and verification of the claim, and suffering defeat in a trial on the merits in the court below, should on appeal, in all fairness, be estopped by such negligence from making complaint of the want of such demand and proof.

There are, however, other cases in which, notwithstanding demand of the personal representative was not necessary, a reversal of the judgment recovered against him by the creditor in the lower court was adjudged because of want of verification of the claim sued on; the reversal being ordered with direction to the lower court to set aside the judgment rendered, compel the necessary statutory verification of the claim and again render judg-

ment therefor against the personal representative. Worthley's Admr., etc. v. Hammond, 76 Ky. 510. But in this class of cases the appeal was taken by the personal representative and the reversal authorized because the personal representative had, before making defense in the lower court on the merits, objected to the want of verification of the claim and been refused a rule requiring its verification.

While in the instant case appellant, after being brought into court by appellee, was not required to make of the latter demand of the payment of the claims presented by his counter-claim, set-off and cross-petition, the verification and proof thereof required by the statute was imperatively necessary; and in the absence of such verification and proof, the executor could not legally pay nor the court legally allow or render judgment for them; hence the dismissal, without prejudice, of the counter-claim and set-off by the court was authorized, of which action appellant is estopped on this appeal to complain, as to allow him to do so would permit him to take advantage of his own negligence in failing to make, in the court below, the necessary statutory verification and proof of the demands.

Judgment affirmed.