## Bailey's Administrator v. Hampton Grocery Co., et al.

(Decided October 12, 1920.)

### Appeal from Knott Circuit Court.

1. Descent and Distribution—Claims—Pleading.—In an action brought under section 428, Civil Code, for a settlement of a decedent's estate, a claimant against a decedent's estate has a right to set up his claim by a pleading, and if it is disputed, he has a right to demand that the grounds of defense to his claim be set out by a pleading, according to section 115, Civil Code, or by an exception to the commissioner's report, which sets out the necessary allegations and denials to constitute a defense.

2. Descent and Distribution—Claims—Pleading.—In an action under section 428, Civil Code, for the settlement of a decedent's estate, a creditor who sets up his claim by a pleading or by a document, which accompanied the pleading, and the formal verification and proof of his claim is defectively made, is not subject to have his pleading dismissed on that account, as he must present a verification and proof of it, before the commissioner, as required by section 3870, Kentucky Statutes, and the section following, or else his claim will not be allowed.

3. Descent and Distribution—Pleading—Verification—Waiver.—In an action under section 428, Civil Code, for the settlement of a decedent's estate, if a creditor sets up his claim by a pleading, the other parties to the action, will not admit the averments in the pleading, by a failure to deny them by a pleading, nor will they waive the verification and proof of the claim required by the statute, by a failure to move for a rule to require the verifica-

tion to be made, or by setting it up in an answer, as they have a right to except to the report of the commissioner, if the claim is allowed, not only on account of the want of proper verification and proof of the claim, but because of its want of merit.

4.  Descent and Distribution—Pleading.—In an action for the settlement of a decedent's estate, under section 428, Civil Code, where a creditor sets up his claim by a pleading, and any other party in interest disputes the claim by a pleading, he will be bound by the rules of pleading, as applied to other actions.

J. M. BAILEY and A. B. COMBS for appellant.

J. M. BAKER and H. H. SMITH for appellees.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

This action was by one of the creditors of the estate of Sarah J. Bailey, deceased, against her surviving husband and administrator, J. M. Bailey, Fred Crowder, her only heir, and certain of her creditors known to the plaintiff, for the purpose of settling and distributing her estate as provided by section 428, Civil Code, and the sections following and relating thereto. On the 21st day of March, 1916, the action was ordered to be referred to the master commissioner of the court, as provided by section 430 Civil Code. On the second day of July, 1917, J. M. Bailey filed an answer, counterclaim and cross-petition, in which he set up various items of indebtedness of the decedent's estate to him as an individual. These claims were, none of them, founded upon a written obligation of the decedent to the claimant, and he did not file with his pleading a formal statement of his account, verified and proven as required by section 3870, Kentucky Statutes, but the items of indebtedness were set out in the body of the pleading, and the affidavit required by section 3870, *supra*, by a claimant against a decedent's estate, was incorporated in the pleading, and the pleading verified by his oath, but no affidavit of any other person was filed with the pleading who deposed, that he believed the claims were just and correct, and giving his reasons therefor as required by section 3870, *supra*, when a claim against an estate of a decedent is not founded upon a written obligation of the decedent, or a judgment. On April 5, 1918, the appellant tendered in open court an amended answer, counterclaim and cross-petition which related entirely to claims in his favor as administrator against the estate of the decedent. To the filing of this paper objection was made and motion to file

was submitted, but was never passed upon by the court.
On the same day the commissioner filed a report showing
the claims of indebtedness against the estate, which had
been filed with and allowed by him, and also, reported the
sum of the collections, and the value of certain articles
of personal property which had been owned by decedent
and which had gone into the hands of the appellant as
administrator, and also, the value of a small tract of
land which was owned by decedent, and the face value of
certain notes and accounts belonging to the estate and
which had not been collected by the administrator.  It
does not appear whether the appellant, as administrator,
had ever made an inventory, or caused an appraisement
of the estate to be made.  The appellant filed exceptions
to the report of the commissioner, one of which was sus-
tained, and the others overruled, and the report approved.
The appellant, as administrator, was directed by an
order of the court to pay over to the commissioner for
distribution among the creditors, whose claims had been
allowed, the money, in his hands, and the value of certain
articles of personal property in his hands, which he had
not reduced to money.  From the judgment of the court,
including that upon the exceptions to the report, Bailey
both as administrator and as a claimant, has appealed.
The exceptions to the report of the commissioner will
be considered in their order.

(a)   The report did not touch upon any of the claims
of indebtedness against the estate set out by appellant in
his favor, either in his original answer, counterclaim, and
cross-petition or in the amendment offered thereto, and
this action by the commissioner in neither allowing nor
in his report stating the disallowance of the claims, con-
stituted one of the grounds of exception which was over-
ruled by the court.  The appellees justify the ruling upon
the ground that the claims of appellant were not verified
and proven by him as required by section 3870, Ken-
tucky Statutes, and demand made for their payment, be-
fore suit brought as required by section 3872, Kentucky
Statutes, and that they were not presented to the commis-
sioner for consideration, verified and proven as required
by law.  Touching these contentions it may be said that
the claims being in favor of the personal representative
himself, no demand by him was necessary or possible,
as it would be idle to require him to make a demand of
himself, and besides no demand is necessary on the part
of a claimant of a personal representative of an insolvent
decedent, as Mrs. Bailey appears to have been, when the

claim is sued upon in an action to settle the estate under section 428 Civil Code. Crane & Breed Mfg. Co. v. Stagg's Admr., 135 Ky. 435; Gray v. Lewis, 79 Ky. 453. The want of necessity for a demand of payment of a claim, verified and accompanied with the proof of its justness and correctness, does not, however, dispense with the necessity of the claimant verifying and proving his claims against a decedent's estate in the manner and as required by section 3870, Kentucky Statutes, as section 3874 provides in broad terms that "No demand against a decedent's estate shall be paid by his personal representative or allowed as a credit by any commissioner or court which is not verified by affidavit, as required herein." In Homer v. Harris, 10 Bush 357; Callender v. Callender, 24 K. L. R. 1145; Beddow v. Wilson, 90 S. W. 228, which were actions for the settlement of estates of decedents and in the first and second ones of which, it was held that a creditor had the right to set up his claim against a decedent's estate by a pleading, if he desired to do so, but when he did so, if the claim was disputed, he was entitled to have the grounds of a defense to it set up, either by answer or by exception to the report of the commissioner allowing it, and containing the denials or allegations necessary to present a defense. In the first and last of the above cited cases, it was held that a petition or answer of the claimant containing the necessary allegations and sworn to by the claimant was a sufficient verification of the claim, where no other verification than the oath of the claimant was necessary as when the claim was founded upon a written obligation of the decedent. In the case of Warfield v. Gardner, 79 Ky. 583, it was held that the claim should be stated, verified and proven in a document, other than the pleading, and filed with the pleading, but that was in an action at law where a judgment was sought against the personal representative upon a setoff. Hence, it seems that appellant had the right to set up his claims by his answer, counterclaim and cross-petition as he did, and the verification of the pleading by him containing the averments required by section 3870, Kentucky Statutes, was a sufficient verification of the claim, so far as appellant himself was required to do, but, his claims not being based upon written obligations, signed by the decedent, nor upon judgments, the proof of the claims was not such as is required by the statutes, *supra,* as the affidavit of no witness stating his belief that the claims were just and correct, and giving his reasons

therefor, accompanied the pleading.   However, a motion by any party to a suit of this character for a rule to require a complete formal, *prima facie* proof of the claims by appellant or suffer a dismissal of his counterclaim and cross-petition, would not have prevailed, because, as held in Huffman v. Moore's Admr., 101 Ky. 288, this being an action under section 428, Civil Code, involved a reference to the master commissioner to pass upon and report every claim and demand, that might be presented, and each of which must be verified and proved, as required by the statute, before being allowed, and if not so proven and verified, to be rejected by the commissioner. Sections 430, 431, 432, Civil Code.   The claimant in such an action, although the formal verification and proof of his claim was insufficient in his pleading, might thereafter present to the commissioner his claim properly verified and proven and the right to have it allowed would depend upon strict compliance with the statute in that regard. In the instant case, the appellant followed the filing of his verified answer, counterclaim and cross-petition, which set up his claims, with the depositions of various witnesses taken before the commissioner, and cross examined by the attorney for the plaintiff in an effort to prove his claims, and their evidence the commissioner reported to the court.   It would seem that in an action of this character, this was a substantial compliance with the requirements of the statute as to the verification and proof of the claims, if the depositions of the witnesses do in fact prove such facts, and show the claims of indebetedness to be just, correct and unpaid.   Spradlin v. Stanley's Admr., 124 Ky. 701.

The contention advanced by appellant, that, in as much, as he set out his claims in pleading by an answer, counterclaim and cross-petition, and the averments in it were never denied nor demurred to, that he was entitled to have a judgment for the amount of his claims as in any other action where the material averments of the pleading are not denied, is not tenable.   A distinction must be drawn between the case where a personal representative, or the heirs where there is no personal representative, is sued at law for a debt claimed against a decedent, and a judgment is sought against the personal representative or the heirs, to the extent of assets received; or where equitable relief is sought which does not involve a settlement of a decedent's estate; and an action brought by a representative, legatee, distributee or creditor of a deceased person under section 428 Civil

Code, for a settlement of an insolvent decedent's estate, and the distribution of his assets between his creditors and the surplus to the persons entitled thereto. In the first two instances before an action can be maintained by a creditor he must have verified his claim and proven same by the necessary affidavits as provided in sections 3870 and 3871, Kentucky Statutes, and made a demand for the payment of it, of the personal representative, where there is a personal representative, accompanied by the required verification and proof; and if sued in such character of actions by a personal representative, if the party sued would plead a counterclaim or set off against the demand, he must prepare his demand and verify it, himself, if according to section 3870, *supra,* the verification of the claimant alone is required, and if not, accompany it with the affidavit of another person and file it with his answer, counterclaim or setoff. Warfield v. Gardner, 79 Ky. 583; Ward v. Rhorer, 21 R. 1086; Millett v. Watkins, 4 Bush 642. The verification, proof and demand in such instances are necessary in order to give a personal representative opportunity to pay the claim without litigation, to apprise him of its existence, and in the instance of every claim against a decedent, to search the conscience of the claimant. In the instances of such actions, if a demand has not been made with proper verification and proof, the personal representative may defeat the action by having a rule against the claimant to show cause, why his action shall not be dismissed, or may plead the want of such demand, but if he pleads to the action without objection to the want of demand and proper verification and proof, the objections on those accounts are waived, and the controversy is determined on its merits, and the failure to deny any material averments of the adversary's pleading would admit the truth of them. It is only in such actions that it has been held that the want of formal verification and proof is waived by pleading without taking advantage of the defects. Cockrill v. Mize, 12 S. W. 1040; Gray v. Marshall, 13 S. W. 913; Rigley v. Pelley, 13 R. 93; Gough's Admr. v. Albey, 10 R. 690; Usher v. Flood, 12 K. L. R. 721; Howard v. Leavell, 10 Bush 48; Stix v. Eversole's Admr., 106 Ky. 516; Tipton's Admr. v. Richardson, 54 S.W. 738; Phillips' Admr. v. Rudy, 146 Ky. 380; Ringo v. New Farmers Bank, 101 Ky. 96; Warfield v. Gardner, *supra;* Lyttle v. Davidson, 67 S. W. 34; Thomas v. Thomas, 15 B. M. 184. It would seem to follow that where a party to any kind of an action involving a claim against a decedent's estate

should ignore the want of formal verification and proof of the claim and plead to the merits of the action he would thereby waive the objection, and would be bound by an omission to deny the material averments of an adversary's pleading; but in an action by a creditor to settle an insolvent decedent's estate, it must necessarily have a reference to the commissioner of the court, who considers the proof of the claim and allows or disallows it upon formal proof required by statute of its correctness, if there is no dispute, and if the claim is allowed, those disputing it may except to the sufficiency of its verification and proof, and if the formal verification and proof are as required by the statute, the party may contest the justness of the claim upon its merits, by excepting to the report of the commissioner. If it is not allowed, the claimant may except upon that account and the matter in each instance is finally determined by the court. While a claimant who sets up his claim in a pleading is entitled to have the defense to it, if it is disputed either set out in the pleading or by an exception to the commissioner's report, a party in interest, who has not pleaded to the claim as set up, may do so by an exception, to the report of the commissioner if the claim is allowed. Horne v. Harris, *supra*. Hence, a party to an action under section 428, Civil Code, *supra*, who does not plead to a claim set up by a pleading does not waive his right to contest it, unless he fails to except to the report of the commissioner allowing it.

(b)    The amended answer, counterclaim and cross-petition was never filed, and objection to the filing of it being made, it can not be considered as filed, as the parties never so treated it. It set up only one additional claim to those set out in the original pleading, and appellant, upon excepting to the commissioner's report, was allowed that claim as a credit, and hence has nothing to complain of on account of that offered pleading.

(c)    The commissioner reported an item of $135.00 as an asset of the estate, reciting that it was money collected from John Sparkman by J. M. Baker, and that an agreement had been entered into between the appellant, J. M. Baker, and H. H. Smith that it should be paid to the commissioner and added to the general funds to be prorated among the creditors. This finding was excepted to by appellant, and there is no evidence of any such agreement having been made, in the record. The money is claimed by appellant and is in litigation in another action. The evidence fails to show that it is an asset of de-

cedent's estate, and the exception should have been sustained.

(d) $31.00 is charged to appellant as administrator, as the value of a cow. He contends that the cow has died, without his fault, but the evidence fails to show this, but it does show that the value of this cow is included in the item of $165 charged to appellant and the exception should have been sustained.

(e) The evidence fails to show the amount of $62.00 collected by appellant from H. R. Johnson. It fails to show any amount collected from Johnson, but the exception admits the collection of $45.00 and it should have been sustained to all in excess of $45.00.

(f) The appellant excepts to the report because he was not allowed, in the settlement with him, as administrator, a credit of $252.26 as his compensation for collecting and paying over to the commissioner the sum he was ordered to pay over to him. It was not necessary that he should file a verified claim for it. It was no transaction with the decedent. The settlement fully shows the sums collected by him. For the amounts collected by him and paid over to the commissioner he should be allowed a reasonable sum for his services not exceeding 5%. The exception should have been sustained, an allowance made him in accordance with the value of his services, not exceeding the statutory rate and the sum charged to him, credited by it. Section 3883 Kentucky Statutes.

(g) The exception to the sum of $8.00 charged to appellant, as the value of a show case, was properly overruled as the competent evidence shows it to have been an asset of the decedent.

(h) The claims of indebtedness which were disallowed by the commissioner, and on account of which the appellant excepted, and the exceptions overruled, are as follows:

1. A house of the value of $1,200.00 which appellant alleges that decedent burned, or procured to be burned.

2. Household goods and books burned as above stated, $175.00.

3. Corn and meal burned in the house as above stated, $250.00.

4. Chickens of the value of $50.00.

5. Corn, fodder and potatoes of the value of $400.00.

6. Money loaned to decedent and otherwise gotten from him by decedent in the sum of $800.00.

7. Services as an attorney rendered to decedent by appellant of the value of $180.00.

8. The rent of the room for a store $250.00.

The facts bearing upon all these claims of indebtedness are, that decedent was a widow, with one son who was a young man, and she engaged in a litigation with the heirs of her deceased husband over assets of his estate, and had the prospect of receiving several thousand dollars from the estate. The decedent and appellant married on March 20, 1913, and went to reside in a house upon a tract of land, the title to which was in the son of the appellant, but the latter seemed to have control and use of it, but upon what terms does not appear, but appellant erected the dwelling house. Shortly after the marriage, decedent engaged in the business of a general merchant, using for that purpose a room in the second story of the house in which she and her husband made their dwelling. The house burned in March, 1915, with all of its contents, and thereafter in July, 1915, the decedent died intestate, leaving a small amount of personal property, in kind, and no money. A few months before the house burned, the son of decedent came to live with and assist her in her business, which was then in a losing condition. The decedent drank to some extent and her son did likewise, and she and appellant did not agree very well at all times, though they continued to live together until her death, and presumably were not alienated on account of occasional clashes. The evidence while sufficient to create a suspicion that the decedent, or possibly her son, destroyed the house, the fact that appellant continued to live with her until her death dispels the idea that he, with more knowledge of the situation than any one else, believed his wife to be guilty of the crime charged, and the evidence is not sufficient to support it, and this disposes of the first foregoing three items.

When the appellant and decedent were married, he had a number of chickens at his house, and she at once took the supervision and care of the chickens, and they thereafter ate some, and others were probably sold, but who received the proceeds does not appear, and after the burning of the house, Fred Crowder sold about $50.00 worth of chickens in an adjoining county. If these were the chickens raised at appellant's home by decedent, it does not appear, that they were sold by her authority, or that she ever received any of the proceeds.

A witness proves that during the time appellant and decedent were living as husband and wife, appellant raised a crop of potatoes of the value, probably, in the opinion of the witness, of $47.00, and these were used to some extent for family use, and some of them were sold at the house of appellant, but the evidence fails to disclose whether appellant or decedent sold them, or who received the price for them.

The appellant, also, grew and had a crop of corn, amounting to four or five hundred bushels, and a considerable quantity of blade fodder. Some of the corn and fodder was fed to the teams of drummers and other persons who would come to appellant's house and decedent's store, and the money received for at least a portion of it was paid to the decedent. There is nothing, however, from which any conclusion can be drawn, as to the amount of money received in that way by the decedent, as the evidence is very negligible.

On one occasion, the evidence proves, that appellant had a check for $165.00 for which he had sold land, and he directed that it be deposited, in the bank to the credit of the decedent's account. On another occasion, he sold land to the sum of $200.00 which was paid by his vendee to decedent, by his direction. After their marriage, and while decedent was engaged in the litigation with her first husband's heirs, appellant rendered services for her as an attorney, the value of which services, the witnesses fix at $120.00. As before stated, the store of decedent was kept in a room of the dwelling, in which she and appellant resided. In the consideration of these claims, the evidence of appellant cannot be considered, as clearly, he cannot be permitted to testify in his own behalf, concerning transactions with a person who is dead, at the time the evidence is offered. The competent evidence does not indicate that there was any contract between appellant and decedent, in regard to the above mentioned claims, and no promise on her part to account to the husband or that she would reimburse him. The question, whether since the act of March 20, 1894, a married woman is authorized at law to contract with her husband, is not necessary to be decided, as in equity, husband and wife have always been considered as distinct persons and valid contracts based upon a proper consideration and free from duress and fraud, have in courts of equity been enforced as between them, relating to the separate estate of the wife, and the act of 1894, substantially, makes all the estate of a married woman a separate estate. The

appellant had the right to donate his legal services, the charges for feeding the drummer's teams, the use of a room for a store, and the $165.00 and $200.00 to his wife, if he desired, and the intimate relations existing between husband and wife who are living together, in the same house as well as the nature of the circumstances and the appellant's conduct, are such, that a promise on the part of the wife does not arise by implication to pay or reimburse the appellant on account of the charges, as it doubtless would in the case of persons differently situated to each other, and it is rather to be presumed, that he rendered the legal services, furnished the store room and permitted the collections, as well as furnished the sums of money mentioned to assist his wife in the conduct of her business, without expectation of being reimbursed, and relying for his compensation on benefits, which might accrue to him in the future. The mere depositing money to another's account or directing one to pay money, which is due him to another, does not of itself raise the implication on the part of the recipient of a promise to repay, much less would it do so in case of husband and wife. Hence, the ruling of the court, in overruling the exceptions, because the commissioner failed to allow the claims, was not erroneous.

The judgment, however, for the reasons indicated is reversed and the cause remanded for proper proceedings not inconsistent with this opinion.