## Hibler's Administratrix v. Bourbon Agricultural Bank & Trust Company.

(Decided October 2, 1928.)

### Appeal from Bourbon Circuit Court.

1. Pleading.—Where bank suing to recover overdraft on depositors' checking account did not, in its reply, deny that a settlement was made, nor seek to set aside settlement, but denied accord and satisfaction set up in answer and insisted that settlement involved an undisputed balance which by mutual mistake did not embrace matter in litigation, court did not err in overruling demurrer to reply as an attempt to avoid accord and satisfaction set up in answer by alleging mutual mistake; there being no departure.

2. Appeal and Error.—Where, in bank's action to recover overdraft in defendants' checking account, 10 years elapsed between second order of reference and second report of master commissioner. without either party demanding itemized proofs of alleged errors in account, held that in absence of explanation defendants could not complain on appeal of court's failure to require bank to introduce itemized proof of errors on which it relied.

3. Banks and Banking.—Where deposit tickets were used in check-
ing over depositors' account by bank officials, their misplacement
was chargeable to bank, which was suing to recover overdraft
based on alleged errors in defendants' account.

4. Banks and Banking.—Bank's ledger accounts showing depositors'
deposits, checks, and daily balances, shown to be in handwriting
of one who had custody of records, held admissible in evidence
and far more convincing than belated memory of individual depos-
itors, who transacted large volume of business without keeping
books and who merely assumed that they were making money and
that their actual expenses would not have exceeded certain sums.

5. Accord and Satisfaction.—Where settlement between bank and de-
fendants was intended to pay balance due on defendants' account
with bank at that time, such settlement and payment would con-
stitute accord and satisfaction only if amount of balance was in
dispute, so as to bar bank's subsequent claim for overdrafts due
to errors in making ledger extensions of daily balances.

6. Appeal and Error.—Finding to same effect of two master commis-
sioners and a judge of the circuit court on conflicting evidence will
not be disturbed on appeal.

7. Appeal and Error.—That no verification or demand was made on
claim against decedent cannot be raised for first time in Court of
Appeals.

C. A. McMILLAN for appellant.

DENIS DUNDON for appellee.

Opinion of the Court by Judge McCandless—Af-
firming.

On December 28, 1911, the Agricultural Bank of
Paris, Ky., filed suit against Harvey and Bishop Hibler,
as partners, on an overdraft of $2,166.40. The defend-
ants by answer and amended answer traversed the alle-
gations of the petition and pleaded accord and satisfac-
tion. Alleging that their firm was dissolved in 1910. They
sought an itemized statement of their account with the
bank, but that this was not furnished and the bank ad-
vised them they were indebted to it in the sum of $495.
They did not think they owed this sum, but agreed to pay
it in order to settle the account. That thereupon the
bank loaned them the additional sum of $289, and they
executed to it their note for $782.73, in full payment of
their indebtedness, and that this was later paid. They
further alleged that the bank failed to give them credit
by certain deposits, which they itemized. In its reply
the bank denied any failure to credit the deposits named.

It admitted the settlement pleaded, but alleged that it was intended to and did only cover indebtedness then appearing on the account and over which there was no dispute. That the indebtedness mentioned in this action was unknown to either party and by mutual mistake was not included in that settlement or considered therein. Defendants controverted these allegations.

On account of the volume and complexity of the account the case was referred to the master commissioner. Proof was taken on depositions, and on the ——— day of ———, 1916, the master filed a report upon the issues. The conclusion of his report was in favor of allowing appellee's claim, though he made a number of findings, to some of which reference will be made later. Exceptions were filed to this report, and the case again referred to the master, with instructions to hear further proof and report upon the character and state of certain mistakes in bookkeeping, appearing in the accounts as kept by the bank. This was never done, and on the ——— day of ——— 1927, and after a change in the personnel of the court, a second report was filed on the same proof and to the same effect as the first. Exceptions to this report were filed and overruled and the report confirmed. In the meantime the Agricultural Bank of Paris was merged into the Bourbon Agricultural Bank & Trust Company, and the suit progressed in the name of the latter. Also, Bishop Hibler died and the action was revived against his administratrix. And upon confirming the report the court rendered judgment in favor of the bank against both defendants for the full amount of the claim, the recovery against the administratrix being restricted to assets of the estate in her hands. She appeals.

The facts are these: Defendants carried a checking account with plaintiff for many years. It appears that a statement was made and balance struck in November, 1902, after which the account ran along apparently without a statement being rendered until August, 1910. It does not appear that defendants ever inspected the account or gave it any particular attention. They either brought or sent checks and currency for deposit. The deposit slips were made out by the bank officials. Defendants had no pass book and kept no deposit slips. In the early part of 1909, plaintiff informed defendants they were overdrawn in excess of $4,000. After that they made substantial deposits and drew but few checks, so that by August, 1910, the overdraft was reduced to

around $145. They also owed a note of $350. They owed other banks in Paris and needed some additional funds. It was agreed by the different banks to loan them $1,000 additional to be allotted in proportion to their indebtedness to each. Plaintiff furnished its pro rata of $290, and in turn defendants executed a note to it for $782 secured by a mortgage. This was accepted in settlement of the account and later paid. Shortly after this plaintiff's individual bookkeeper died, and an examination of the accounts disclosed gross irregularities in bookkeeping and that he had been peculating the funds of the bank. A number of errors were found in defendant's account in which the daily balances had been erroneously extended, although it is claimed that all of the deposits made by them and checks drawn by them were correctly entered. The correction of these errors disclosed a still existing overdraft of over $2,000, the basis of this suit. As to these matters three officials, including the cashier, assistant cashier, and individual bookkeeper have testified that after the death of the bookkeeper an official audit disclosed numerous errors in defendants' account. Their ledger contains three columns in which are entered (1) deposits; (2) checks; (3) customers' daily balance. They compared the original deposit tickets and the checks drawn by defendants with the entries in columns 1 and 2 of the ledger mentioned above, and found the record to be absolutely correct in those particulars, but that it showed numerous errors in extending and entering the daily balances in column 3. When corrected these errors disclosed a still existing overdraft in the amount stated. Plaintiff also furnished and filed in the record an itemized statement of all checks drawn by defendants, giving the date and name of the payee on each, and also the date and amount of each deposit made during that period, and the totals of these showed an overdraft identical with that set out above. At the time of the settlement in 1910 and prior thereto there was no dispute or conflicting claims as to the amount the defendants owed on the account, and no objection made by either of the defendants to any of the items embraced therein or to the balance as then shown. Neither of the parties had any knowledge of the matters claimed in this action and they were not included in that settlement.

Defendants testify that when informed of the overdraft they did object and told the bank officials they did not think they owed it, and now say they did not. They

say, however, that the bank threatened to sue them, and as they were preparing to dissolve their business they preferred paying it to engaging in a suit, and in good faith entered into the settlement of August, 1910, in complete satisfaction of the demands against them. In this they are corroborated by their agent, McClure, to whom in 1910 they made a deed of trust to their property to be handled for the benefit of their creditors.

Mr. McClure testifies that the defendants were objecting to the accounts and that he advised them to make the settlement mentioned and that he procured an agreement for its execution. Defendants admitted that they had possession of all the checks for several years before they gave their depositions. They questioned some of them, but it is satisfactorily shown that all the checks were genuine. They made no attempt to prove any additional deposits not shown on the account, and say they could not do this in the absence of the deposit slips.

1. It is insisted that the court erred in overruling defendants' demurrer to the reply. The argument is that they had pleaded accord and satisfaction in the answer, and that this could not be avoided for mutual mistake except in an equitable action to cancel or reform the settlement; that this could have been pleaded in an amended petition, but was not permissible in a reply, especially in a reply in a common-law action. The position is untenable. It will be observed that plaintiff is not departing from its original cause of action. It is not denying that a settlement was made, or seeking to set it aside, but, on the contrary, while denying accord and satisfaction, is insisting that the settlement was made on an undisputed balance, which by mutual mistake of both parties did not embrace the matter here in litigation and which was not considered in that settlement. We are not prepared to say this was not proper pleading.

2. It is also insisted that the court erred in not requiring the plaintiff to introduce itemized proof of the different errors upon which it relies as evidence of the overdraft in accordance with the second order of reference to the master. As to which of the parties had the technical burden of proof on this question is not without difficulty. But it will be noted that ten years elapsed between the second order of reference and the second report filed by the master commissioner, and certainly during that period of time either of the parties to the litigation could have required this proof to be taken, though neither

did so, the record being silent as to the reason for this nonaction; and at this late date it would seem that neither is in a position to complain of the court's action in disposing of the matter.

3. Considering the case on its merits, we have but little doubt that defendants owe the debt. A period of 16 years has elapsed since suit was filed, during which time defendants have been in possession of the checks and an itemized statement of the account, including checks and deposits. They have utterly failed to show that a single check is not a proper charge against them, nor have they shown a single deposit that they actually made for which they did not receive credit. In view of the fact that the deposit tickets were used in checking over this account by the bank officials, their misplacement is chargeable to plaintiff, but we have frequently held that ledger accounts such as these, shown to be in the handwriting of the one who had custody of the records, were competent in evidence. Such evidence is far more convincing than the belated memory of individuals who transact a large volume of business without keeping books and merely assume they were making money and that their actual expenses would not have exceeded certain sums. Such is the quantum of defendants' evidence.

4. In its last analysis the case turns upon the effect to be given the settlement of August, 1910. It clearly appears that the parties intended for defendants to pay the balance due on their account at that time. If the amount of that balance was in dispute such settlement and payment would constitute an accord and satisfaction and plaintiff would be concluded thereby. On the other hand, if the items embraced therein were admitted by the parties without dispute, it would not constitute an accord and satisfaction because no one claims the items involved in this action were known to either of them or could have been considered at that time. On this point the evidence is conflicting and the mind left in doubt. It must be remembered that the $145 balance then settled constituted part of the overdraft which defendants had been reducing for severel months. As pertinently suggested in the commissioners' report, the circumstance that the defendants during a period of several months and at a time they were in financial distress voluntarily made payments on an overdraft amounting to $4,000 without any investigation tends to negative their claim that they were disputing the account. Otherwise the evidence is conflicting,

and as two master commissioners and a judge of the circuit court, all of whom are presumed to have known the parties, have found adversely to defendants' claims in this particular we are not disposed to overrule their findings.

5. Lastly, no verification or demand was made on this claim, and it is insisted by the administratrix that the case should be reversed for that reason. There is some confusion in our decisions on this point, though when the facts in each case are considered, it is more apparent than real. In Hall v. Murphy, 214 Ky. 692, 283 S. W. 1066, following Harding v. Bullard, 172 Ky. 416, 189 S. W. 242, it is said that while the statutory provision for demand may be waived, that verification of the claim may not be waived. On the other hand, in Spradlin v. Stanley, 124 Ky. 701, 99 S. W. 965; Phillips v. Rudy, 146 Ky. 780, 143 S. W. 397, and Bailey v. Hampton Grocery Co., 189 Ky. 266, 224 S. W. 1067, it was held that this question cannnot be raised by an adult for the first time in this court. The two lines of cases are thus distinguished. So considered the conclusion reached in the first cases cited was sound though the language there used was too broad for general application. Here as in the cases last cited the question was raised for the first time in this court, and the cases will be harmonized by abiding by the rule therein laid down.

Wherefore, perceiving no error, the judgment is affirmed.