### Bootes v. Gwinner's Administrator.

(Decided Nov. 14, 1933.)

GEORGE J. HEROLD for appellant.

C. W. YUNGBLUT and ARTHUR C. HALL for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

Charles W. Weinel, administrator of the estate of Martin Gwinner, deceased, instituted this suit in the Campbell circuit court to recover of Emma K. Bootes the sum of $1,500, announced by her promissory note, dated November 27, 1926, bearing interest at the rate of 4 per cent.

Defendant filed her answer, counterclaim and set-off, in which she admitted the execution and delivery of the note, but pleaded as a counterclaim and set-off that in October, 1925, she and Martin Gwinner, the deceased, entered into a contract whereby decedent agreed to give her a sum of money and certain Government bonds, in consideration for which she was to furnish him a home with her and her brother, during the life of decedent. The pertinent part of her allegations relating to the contract are as follows:

"Defendant says that in October, 1925, the decedent, Martin Gwinner, who was her cousin, and who was then 76 years of age and had no home,

came to this defendant and offered her two thousand ($2,000.00) dollars which he had on deposit in the Bank of Alexandria, at Alexandria, Kentucky, and registered United States Liberty Bonds in the sum of Seven Hundred ($700.00) dollars if she would provide a home for him as long as he should live. Defendant accepted said offer and said Martin Gwinner and defendant entered into a contract in conformity therewith and the said Martin Gwinner gave and delivered to defendant, Emma K. Bootes, the registered United States Liberty Bonds in the sum of $700.00 and the deposit slip for the $2,000.00 on deposit in said Bank of Alexandria.''

She further pleaded, however, that it was agreed that the decedent was to collect the interest on the Liberty bonds, and that defendant would pay him interest at 4 per cent. per annum on the money which was on deposit in the said bank, and that the principal of said bonds and money would become defendant's property at the death of Martin Gwinner, the deceased. She further alleged that, pursuant to the said agreement, she furnished deceased with a suitable home for a period of 44 months, and that, without any cause or reason therefor, deceased left the home of defendant and went to live with Charles W. Weinel, the plaintiff herein. Gwinner died in 8 months after he left the home of appellant.

On November 27, 1926, which was more than a year after entering into the alleged contract, appellant told decedent that she wanted to borrow of him $1,500, and to this he assented. They went to the Bank of Alexandria, where Gwinner had his money on deposit, and Gwinner drew from the bank the sum of $1,500, and this sum was deposited to the credit of appellant. The cashier of the bank prepared the note which appellant signed, being the same note sued on herein. Immediately after Gwinner left the home of appellant, in 1929, he went to the bank and told the cashier that he wanted him to collect the note. Considerable negotiations developed between Gwinner and the cashier of the bank, as his representative, and the appellant and her brother, relating to the collection of the note. Appellant's brother offered to pay Gwinner a less sum than the face of the note, as a compromise, but Gwinner refused to accept any sum less than that represented by the note. So

far as the record discloses, there was nothing said about the contract between Gwinner and appellant upon which she bases her counterclaim, until after Gwinner's administrator instituted this suit.

In the prayer of her answer and counterclaim, appellant asked that she be adjudged the owner of the Liberty bonds and the owner of the remainder of the sum of $2,000 deposited in the said bank, and, if same cannot be produced, for a judgment against plaintiff, administrator of the estate of Martin Gwinner, for the said sums and for costs herein expended and for all proper relief. Plaintiff's reply to the answer and counterclaim consisted of a traverse only.

Upon the issues thus joined, a trial was had before a jury on the issue as to whether or not the deceased and defendant entered into the alleged contract. At the close of the testimony, plaintiff demurred to the answer and counterclaim, which demurrer was sustained, and, defendant failing to further plead, the court peremptorily instructed the jury to return a verdict for the plaintiff for the sum of $1,500, with interest as therein stated, and judgment was entered accordingly. Defendant appeals.

It is argued for plaintiff, appellee, that the prayer contained in the answer and counterclaim and set-off of appellant is insufficient in that it is not supported by the allegations of the pleading on which it is based. While the prayer is not in the usual form of prayers generally used in counterclaims and set-offs, etc., it is our conclusion that it is broad enough in substance to entitle defendant to the relief sought according to the allegations of the pleading. Civil Code of Practice, sec. 90, and cases cited thereunder. It is further insisted that the alleged contract, not being required to be performed within one year, is within the statute of frauds (Ky. Stats. sec. 470, subd. 7), and for that reason void and unenforceable. In this we are unable to agree. The contract does not show on its face that it was not to be performed within a year. It has been repeatedly held by this court that contracts to keep and care for a person for life are not within the statute of frauds and are valid contracts. Waggener v. Howsley's Adm'r, 164 Ky. 113, 175 S. W. 4; Myers v. Saltry, 163 Ky. 481, 173 S. W. 1138, Ann. Cas. 1916E, 1134; McDaniel v. Hutcherson, 136 Ky. 412, 124 S. W. 384.

The further point is made for appellee that the alleged gift to take effect after the death of the donor was testamentary and could be effective only by his last will and testament as provided by section 4828, Kentucky Statutes, and that the deposit slip for said money, which was delivered to defendant, did not constitute a valid gift inter vivos. But it is our view that these questions do not enter into this case, for reason that appellant bases her action solely upon contract, and the questions to be determined are (a) whether or not such contract was entered into between appellant and decedent, and (b) whether or not appellant could enforce such contract by the way of counterclaim and set-off as herein attempted. We presume that the trial court's reason for sustaining the demurrer was on the theory that defendant could not plead such contract in avoidance of payment of the note. It must be admitted, however, that it is a general rule of evidence that proof of contemporaneous parol declarations and agreements is not admissible to contradict, vary or alter the terms of a written contract, unless the writing only purports to express a part of the contract or the contract is set out in short and incomplete terms which makes parol evidence necessary to make it clear, what of itself is unintelligible, and then the offered evidence must not be inconsistent with the terms of the writing. Tross v. Bills' Ex'x, 189 Ky. 115, 224 S. W. 660, and cases cited therein. But the case at bar does not come within the rule enunciated in the cases, supra. Appellant does not deny the execution of the note or attempt to vary or modify its terms. She merely pleads her contract as a counterclaim and set-off against the estate of decedent.

It is further insisted for appellee that, appellant's claim being against a deceased person, it is mandatory that appellant should first prove her claim by proper affidavit under sections 3870, 3872, and 3874 of the Kentucky Statutes before any judgment could be rendered to her, and citing in support of this contention Hall et al. v. Murphy's Adm'r, 214 Ky. 691, 283 S. W. 1066; Harding v. Bullard, 172 Ky. 416, 189 S. W. 242, 245. In the Hall Case, supra, the court said:

"And, while the demand provided in those sections may be waived, this court in a long line of decisions has held that the provision as to verification is

mandatory, and *judgment cannot be entered before this is done."* (Italics ours.)

But this does not mean that a pleading is demurrable for want of such verification.

In Harding v. Bullard, supra, the court, referring to Lyon's Ex'x v. Logan County Bank's Assignee, 78 S. W. 454, 25 Ky. Law Rep. 1668; Usher's Ex'rs v. Flood, 17 S. W. 132, 12 Ky. Law Rep. 721; Tipton's. Adm'r v. Richardson, 54 S. W. 738, 21 Ky. Law Rep.. 1195, said:

> "It was held that the personal representative had waived both demand and verification of the claim, but all these were cases in which the personal representative had made defense on the merits in the court below without objection to such want of demand and verification. * * * A personal representative, after negligently failing to avail himself of the protection designed by the statute in requiring demand of payment and verification of the claim,. and suffering defeat in a trial on the merits in the court below, should, on appeal, in all fairness, be estopped by such negligence from making complaint of the want of such demand and proof."

It is obvious from what has been said that it was. appellee's duty to proceed by motion to have appellant verify her claim as required by the statute, instead of by demurrer. In Thomas' Ex'r v. Thomas, 15 B. Mon.. (54 Ky.) 144, it is said:

> "It was too late, after the plaintiff had gone through his testimony, to raise his objection for the first time, that the plaintiff had not complied with this preliminary duty."

See, also, Stix, etc., v. Eversole's Adm'r, 106 Ky. 516,. 50 S. W. 832, 21 Ky. Law Rep. 3, in which it is held that a personal representative may waive the demand required by section 3872 of the Kentucky Statutes, and. the filing by him of a general demurrer to the petition against him for a claim against his decedent is a waiver of such demand.

It is our conclusion that the trial court erred in sustaining the demurrer to appellant's answer, counterclaim, and set-off. On a return of the case appellant. will be permitted, if required so to do, to verify her.

328

claim and each party file such other pleadings as may be necessary to the furtherance of justice. Without entering into a detailed discussion of the evidence, it is sufficient to say that it is our view that the evidence was sufficient to warrant a submission to the jury for its finding under appropriate instructions as to whether or not the alleged contract was entered into, and, if so, fix a reasonable value for appellant's service rendered decedent during the time he lived with her.

There are questions raised in brief of counsel as to the measure of damages. Appellant contends that her right of recovery should be based on the contract, and that she should recover that proportionate part of the contract price, based on the time he lived with her from the making of the contract to the time of his death. It is appellee's contention that the measure of damages should be a reasonable sum for the services rendered. It is our conclusion that the measure of damages is as contended for by appellee; i. e., a reasonable sum for the services rendered for the time decedent lived with appellant. Hinton v. Hinton's Executor, 239 Ky. 664, 40 S. W. (2d) 296; Benge's Adm'r v. Creech, 175 Ky. 6, 192 S. W. 817; Broughton v. Broughton, 203 Ky. 692, 262 S. W. 1089; Duke's Adm'r v. Crump, 185 Ky. 323, 215 S. W. 41.

The judgment is reversed and remanded for proceedings consistent with this opinion.