## Maupin v. Maupin et al.

(Decided Nov. 15, 1935.)

SHUMATE & SHUMATE for appellant.

JOHN D. ATKINSON for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—
Affirming.

J. P. Maupin, a resident of Estill county, died intestate on December 8, 1931, and J. W. Maupin, his son, who was appointed and qualified as his administrator, brought this action against the other heirs of J. P. Maupin to settle his estate, which consisted of $1,480 cash and some real estate in Clay City. In his petition he alleged that, by arrangements with the decedent, plaintiff boarded, lodged, and cared for him for eleven years next preceding his death; that for several years the decedent was in bad health and required constant medical and nursing care and attention in addition to his board and lodging, for all of which decedent agreed to pay him a reasonable compensation; a reasonable compensation was $1 per day or an aggregate of $4,015; the decedent paid on the indebtedness the sum of $630, leaving a balance of $3,485; that, in addition to the above sum, there was due the further sum of $—— for expenditures for medicine and incidentals, which were necessary by reason of decedent's sickness, for which this plaintiff paid for him on his behalf the sum of $——, and for which he is entitled to be reimbursed. The petition also contains the further allegation that said sums due plaintiff hereinbefore mentioned, namely, $4,015, and the further sum of $——, subject to a credit of $586, are now just, due, and unpaid, and that there are no set-offs, counterclaims, or usury embraced in said sums. The petition was verified by J. W. Maupin. The defendants filed an answer denying the allegations of the petition and also pleading the five-year statute of limitations (Ky. Stats. sec. 2515). They also pleaded that the decedent lived with plaintiff and paid board of $10 a month regularly to his wife or to plaintiff during the time that he remained with plaintiff. The affirmative allegations of the answer were denied by reply. On motion of plaintiff, the cause was referred to the master commissioner to hear proof on claims against the estate. The only claim asserted was that of plaintiff. The commissioner found that plaintiff and his wife had

been paid the sum of $605 for care and board by the decedent, and recommended that plaintiff be allowed an additional sum of $500. The defendants filed numerous exceptions to the report. The exceptions were sustained, and plaintiff's claim was disallowed. Plaintiff appeals.

Appellees take the position that the action of the court was proper because there was no prior demand, and the claim was not verified by appellant and another person. The record does not disclose any motion to verify the claim or motion to dismiss the action for want of prior demand or proper proof. On the contrary, the cause was referred to the commissioner, and proof was heard without any specific objection for want of proper verification. In view of this situation, it is apparent that want of proper demand and verification was waived. Bootes v. Gwinner's Adm'r, 251 Ky. 322, 64 S. W. (2d) 904; Miller et al. v. Rockcastle County, 248 Ky. 290, 58 S. W. (2d) 598.

The following evidence was heard before the commissioner: Julian Noland Maupin, the 17 year old son of J. W. Maupin, testified that his grandfather James P. Maupin died on December 8, 1931, and lived at his father's house for about ten years before he died. During that time his health was very bad. He had smothering spells and was afflicted with a cancer. His bed was changed; he was waited on and given baths and medicine all the time. His father provided the food and groceries for the home. During the time he was there, his grandfather paid his mother $10 a month. He paid her sometimes, and sometimes he did not. A. F. West testified that James P. Maupin lived at the home of J. W. Maupin for several years and was in declining health. In his opinion it was worth $20 a month to board, room, and care for the decedent when he was able to wait on himself, but more if he was unable to wait on himself. Isaac Neal testified to the decedent's living at the home of appellant prior to his death, but could not say that he lived there continuously. Mary Ellen Maupin, daughter of appellant, and a school-teacher, testified that the decedent lived at the home of her father several years prior to his death. During the latter part of his stay he was in bad health. He was afflicted with coughing and had running sores that had to be attended to. She and her mother looked after him. They had to pay men to come in and give him baths.

At the time of his death, her grandfather was about 91. Fair compensation for taking care of her grandfather was $1 per day. J. L. Bybee fixed a reasonable compensation for boarding and caring for decedent at $1 per day. John Noland was of the opinion that appellant's services were worth $2 a day. John M. Wilson fixed the value of his services at $1.50 a day.

For appellees, A. R. Maupin testified that appellant admitted he had never accounted for the rents, amounting to $124, which he had collected for decedent, and introduced a statement from the Clay City National Bank showing regular payments to Eppa Maupin of numerous sums of $10 and $12 up to and within a short time of decedent's death. He further testified that his father and mother resided with him for about three years prior to their deaths, and the last time his father was there was in the winter of 1926. Witness was at his brother's house quite often, and his father was not able to walk. Mrs. Lula Tipton knew James P. Maupin before his death. She saw him often. He was not well. He wanted her to take and keep him; said he was paying $12 a month and furnishing his own bed. He also said that he gave Mary Maupin about $100. Jesse P. Tipton, husband of Mrs. Lula Tipton, testified substantially to the same effect.

Appellant, J. W. Maupin, was called in rebuttal, and testified as follows: His father stayed with him about two-thirds of the time up until 1920. He came back in 1926, and stayed with him continually until his death in 1931. His father had a bad cough and a cancer on his arm, and required a great deal of attention. He furnished the provisions, groceries, and fuel for the home. He received no pay for keeping his father. His father gave his wife some checks. He did not know what it was for except for caring for him. They had to clean his arm and keep his room clean. Meals had to be taken to him in bed. All his brothers and sisters, with the exception of one, were keeping house at the time his father lived with him. Two dollars a day was about right for caring for his father. He collected rentals on his father's property, but turned it over to his father. Mrs. Laura Lynch testified that the decedent was awfully sick at times. She waited on him about three weeks and was paid by Jim Maupin. The decedent told her he was paying for his board there and had also paid for the furniture in his room.

J. W. Maupin was again introduced and testified that his father handed him one check for $700, dated December 8, 1930, and another check for $1,000, dated October 6, 1931. These checks were written by his father in his presence, and were given him for board and care. A. R. Maupin testified that in his opinion the checks were not in the handwriting of his father. His father said he paid J. W. Maupin for everything he had done for him. D. S. Thomas, a barber, testified that the decedent spoke to him about Jim's wanting to borrow $500 to build a coal tipple.

The right of recovery is predicated solely on an express contract. The only witness who testified to an express contract is appellant himself, who told of the services performed and their value, and stated that the two checks, one for $700 and the other for $1,000, were given him by his father for board and care. As appellant was testifying for himself in support of his claim against his father's estate and concerning a transaction with his father, he was not a competent witness. Civil Code of Practice, section 606, subsection 2; Drake v. Security Trust Co., 203 Ky. 733, 263 S. W. 4. Disregarding his testimony, we have the following situation: At the time of his death, appellant's father was about 91 years of age, and had lived with appellant for a number of years. He had only a few hundred dollars and a small piece of real estate. His account with the Clay City National Bank shows that for more than four and one-half years prior to his death he made regular payments to Eppa Maupin, appellant's wife, in varying sums of $10, $11, and $12. Where a father lives with his son and daughter-in-law and regularly pays his daughter-in-law certain sums over a series of years, the presumption is that they were paid pursuant to an agreement and that they were made, intended, and accepted in full discharge of the father's liability, and the court will not be justified in making an additional allowance, unless it be clearly shown that such was the agreement of the parties. Here no agreement for additional compensation was shown by a competent witness, and we are constrained to the view that the court did not err in rejecting appellant's claim.

Judgment affirmed.